UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARYN MANDABACH PRODUCTIONS LIMITED,<br><br>　　Plaintiff,<br><br>v.<br><br>SADLERS BREWHOUSE LIMITED *et al.*,<br><br>　　Defendants. | Case No.: CV 20-10220-CBM-(JEMx)<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS [24]** |

The matter before the Court is Plaintiff's Motion for Preliminary Injunction Against Defendants. (Dkt. No. 24.) The matter is fully briefed.

## I.　BACKGROUND

Plaintiff Caryn Mandabach Productions Limited ("Plaintiff") is a television producer of the television series *Peaky Blinders*, and alleges it owns the rights to trademarks and other intellectual property to the Peaky Blinders television show and certain quotations/sayings/phrases from the show. This action arises from Defendants Sadlers Brewhouse Limited, Halewood Wines & Spirits, Inc. and The Winebow Group, LLC's (collectively, "Defendants'") alleged marketing, advertising, and sale of three liquors under the name "Peaky Blinder" and use of quotations/sayings/phrases from the show which Plaintiff contends infringes its

trademarks and other intellectual property rights. The Complaint asserts the following causes of action: (1) Federal Unfair Competition, Passing Off, False Advertising and False Designation of Origin, 15 U.S.C. § 1125(a); (2) Unfair Competition, Cal. Bus. & Prof. Code § 17200; (3) False Advertising Under Cal. Bus. & Prof. Code § 17500; and (4) Cancellation of U.S. Trademark Registration No. 5,573,011, 15 U.S.C. §§ 1052(a) and 1119.

## II. STATEMENT OF THE LAW

A party seeking a preliminary injunction must demonstrate (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of injunctive relief, (3) the balance of equities is in its favor, and (4) injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

## III. DISCUSSION

**A. Likelihood of Success on the Merits**

**(1) Unfair Competition and False Designation of Origin**

Plaintiff contends it is likely to succeed on its claims for Unfair Competition and False Designation of Origin under the Lanham Act, and Unfair Competition under Cal. Bus. & Prof. Code § 17200 (first and second causes of action). Ordinarily, to prevail on a claim under 15 U.S.C. § 1125(a) for unfair competition and false designation of origin, a plaintiff must demonstrate 1) it owns a valid, protectible mark, and 2) the defendant's use of the mark is likely to cause consumer confusion. *See Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007).[1] Plaintiff must prove the same elements for its California Unfair Competition claim. *See Mintz*, 716 F. App'x at 622.

**a. *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)**

Defendants argue their use of the mark communicates messages and ideas

---

[1] *See also Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017); *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 622 (9th Cir. 2017).

to consumers such as Defendant Sadler's historical connection to the real Peaky Blinders gang,[2] and therefore the appropriate method for evaluating a likelihood of success of Plaintiff's Lanham Act claims is the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). Under the *Rogers* test, "[a]n artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable unless the [use of the mark] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless [it] explicitly misleads as to the source or the content of the work." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008). The *Rogers* test applies where "artistic expression is at issue." *VIP Prod. LLC v. Jack Daniel's Properties, Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 1054, 208 L. Ed. 2d 522 (2021). "In determining whether a work is expressive, [the court] analyze[s] whether the work is communicating ideas or expressing points of view." *Id*.

Here, Defendant Sadler's managing director declares she "felt that Peaky Blinder was an appropriate name" for Sadler's new dark beer because the Peaky Blinder gang's "well-known dark history" "connected" with the dark beer and she was interested in naming the beer after the Peaky Blinder gang in light of her family and Sadler's history with the gang. (Sadler Dec. ¶¶ 4-20.) Such evidence does not demonstrate Defendants' use of the mark conveys an idea or point of view, and therefore the *Rogers* test does not apply.[3] Accordingly, Plaintiff must

---

[2] Plaintiff's Commercial Director declares the *Peaky Blinders* television show is loosely based on a "historical gang in Birmingham, UK that was in operation from about the 1890s to before World War I and was known as 'the Peaky Blinders.'" (Waddell Decl. ¶ 8.)

[3] *Cf. VIP Prod. LLC,* 953 F.3d at 1175 (finding "Bad Spaniels dog toy, although surely not the equivalent of the *Mona Lisa*, is an expressive work" because "[t]he toy communicates a humorous message using word play to alter the serious phrase that appears on a Jack Daniel's bottle—"Old No. 7 Brand"—with a silly message—"The Old No. 2.""); *id*. ("[w]e recently had 'little difficulty' concluding that greeting cards, which combined the trademarked phrases "Honey Badger Don't Care" and "Honey Badger Don't Give a S - - -" alongside announcements of events such as Halloween and a birthday, were 'expressive works'").

3

demonstrate the traditional elements for its Lanham Act and unfair competition claims regarding ownership of a valid and protectible mark and a likelihood of confusion, which are discussed *infra* at Section III.A(1)b-c.

### b. Valid and Protectible Marks

Because Plaintiff's marks are unregistered, Plaintiff must therefore demonstrate its marks are distinctive (not generic) or have acquired secondary meaning to show the marks are valid and protectable. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018); *Filipino Yellow Pages, Inc. v. Asian J. Publ'n., Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). Generic marks are afforded no protection; descriptive or suggestive marks are given moderate protection; and arbitrary or fanciful marks receive maximum protection. *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987).

Plaintiff argues its marks are "either arbitrary, or suggestive, and thus inherently distinctive" because they do not communicate anything about its *Peaky Blinders* show, relying on the dictionary definitions of the words "Peaky" and "Blinders." However, where a disputed mark is comprised of more than one word, "the validity of the trademark is to be determined by viewing the trademark as a whole" and analyzing whether "those parts, taken together, merely describe the goods or services offered." *California Cooler, Inc. v. Loretto Winer, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985); *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1201 (9th Cir. 2009). Moreover, "[w]hether a mark is suggestive or descriptive can be determined only by reference to the goods or services that it identifies," and thus "the mark must be examined in the industry context rather than in the abstract." *Lahoti*, 586 F.3d at 1198, 1201 (internal citation and quotations omitted).

Here, Plaintiff's use of the mark "Peaky Blinders," when applied to its television program, is likely descriptive or suggestive of a television show regarding a group of persons named the Peaky Blinders. *See Zobmondo Ent., LLC*

*v. Falls Media, LLC*, 602 F.3d 1108, 1116 (9th Cir. 2010).[4] It is not arbitrary because it is related to the good Plaintiff provides—i.e., a television program about a group called the Peaky Blinders.

Plaintiff argues to the extent the Court finds the marks are descriptive or suggestive, the Court should find Plaintiff's unregistered marks are valid and protectible because they have acquired secondary meaning. "In determining whether a mark has obtained secondary meaning, courts consider: 1) whether actual purchasers of the product bearing the mark associate the mark with the producer; (2) the degree and manner of advertising under the mark; (3) the length and manner of use of the mark; and (4) whether use of the mark has been exclusive." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 991 (9th Cir. 2006). "To show secondary meaning, a plaintiff must demonstrate a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (internal quotations omitted).

As to the first factor regarding actual purchasers' association of the mark with the producer, Plaintiff fails to offer evidence demonstrating the public associates the Peaky Blinders title of the television show with a particular source. *See Maljack Prods. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996) (affirming the district court's grant of summary judgment in favor of the defendant on the plaintiff's trademark claim because the plaintiff "failed to produce any evidence that the public associates the 'McLintock' title with a particular source"). Plaintiff submits screenshots of 14 social media posts which it contends shows consumers and retailers attributed a particular source to Defendants' liquor and Plaintiff's television show. However, there is no evidence

---

[4] *See also Masters Software, Inc. v. Discovery Commc'ns, Inc.*, 725 F. Supp. 2d 1294, 1300 (W.D. Wash. 2010); *Toughlove America, LLC v. MTV Networks Co.*, 2009 WL 10669245, at *9 (C.D. Cal. Apr. 21, 2009).

any of these persons who posted on social media are actual purchasers of Defendants' products. *See Miller*, 454 F.3d at 991. Retailers of Defendants' liquor are not members of the consuming public. Moreover, only one of the social media posts submitted by Plaintiff references a statement that Defendants' liquor is produced by the television show (*see* Dkt. No. 24-6 at p.4 of 15 ("I'm a MASSIVE fan of the Peaky Blinders TV series so I had to try their Irish Whiskey and give it a review.")).[5] Such evidence is insufficient to establish secondary meaning.

    As to the second factor, "[e]vidence of sales, advertising and promotional activities may be relevant in determining whether a [trademark] has acquired a secondary meaning," but "[t]he test of secondary meaning is the effectiveness of the effort to create it." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987). Plaintiff submits evidence demonstrating the show ranks as a top-5 Netflix original drama upon the release of each new season, a "teaser" trailer for the fifth season of the show has been viewed 2,522,800 times, and the show has 4 million followers on in its Instagram account, 2.6 million followers on Facebook, and 686,00 followers on Twitter. (Waddell Decl. ¶¶ 14, 16, 18-23.) Plaintiff also offers evidence of press coverage regarding the show during the past 8 years in the United States, such as coverage by The New York Times, The Wall Street Journal, LA Times, Rolling Stone, Variety, Vox, and Mashable. (Drangel Decl. ¶ 11.) However, because Plaintiff offers no evidence regarding how consumers perceive the marks, Plaintiff's evidence regarding the show's ranking on Netflix, the times the trailer for the fifth season has been viewed, the show's social media following, and press coverage does not demonstrate Plaintiff's marks

---

[5] Another social media post submitted by Plaintiff asks, "Are you a Peaky Blinders fan? Check out this awarding [sic] winning gin and whiskey from @sadlersbrewco!" (Dkt. No. 24-6 at p.12 of 15.) Contrary to Plaintiff's contention, this social media post does not associate Plaintiff as the producer of the liquor or indicate that the purchased the liquor and attributes the liquor and television show to a single source.

6

have attained secondary meaning. *See Clamp Mfg. Co. v. Enco Mfg. Co.,* 870 F.2d 512, 517 (9th Cir. 1989) (noting "secondary meaning not established where advertising was extensive but evidence as a whole did not show consumer association").[6]

With respect to the third factor regarding the length and manner of the use of the mark, Plaintiff submits evidence that the *Peaky Blinders* show has been available for viewing to Netflix's subscribers in the U.S. from September 2014 through 2019. (Waddell Decl. ¶¶ 11-14.) However, extensive use alone is insufficient to establish secondary meaning. *See Art Attacks*, 581 F.3d at 1146 ("[A] reasonable jury could not have found secondary meaning based solely on five years of use.").

As to the fourth factor regarding exclusive use, Plaintiff does not meet its burden of submitting evidence demonstrating its use was exclusive.[7]

Therefore, Plaintiff fails to demonstrate a likelihood of success in showing its marks attained secondary meaning at this stage.

      **c.**     **Likelihood of Confusion**

Even assuming Plaintiff's marks are distinct and/or have attained secondary meaning, Plaintiff must also demonstrate a likelihood of confusion to show a likelihood of success on the merits on its false designation and unfair competition claims. *Grocery Outlet Inc.*, 497 F.3d at 951; *Slep-Tone Ent. Corp.*, 845 F.3d at 1249. To determining whether there is a likelihood of confusion, the Court

---

[6] *See also Orgain, Inc. v. N. Innovations Holding Corp.*, 2021 WL 1321653, at *11 (C.D. Cal. Mar. 22, 2021) (where, as here, a trademark plaintiff has proffered no evidence of how consumers perceive the mark, evidence of advertising efforts will not preclude summary judgment as to secondary meaning").

[7] Plaintiff argues the purported use of the "Peaky Blinders" mark by third parties identified by Defendant is not trademark use, and is insufficient to show Plaintiff's use was not substantially exclusive because the third parties did not compete with Plaintiff and did not predate Plaintiff's use of the mark. However, Plaintiff has the burden to demonstrate its unregistered marks attained secondary meaning, not Defendants. *OTR Wheel Eng'g, Inc.*, 897 F.3d at 1022; *Filipino Yellow Pages, Inc.*, 198 F.3d at 1147.

applies the following factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003): (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. Each *Sleekcraft* factor must be considered based on the "totality of facts in a given case," and no factor is dispositive on the issue of likelihood of confusion. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002).

<u>Strength of the Mark</u>

As discussed above, Plaintiff's marks are likely descriptive or suggestive and therefore weak, which does not weigh in favor of finding a likelihood of confusion. *Id.* (noting "a strong mark is 'inherently distinctive,' and therefore it is more likely that consumers will be confused by another's use of the same or similar mark," but concluding that "EMI's mark is weak" and therefore the strength of the mark *Sleekcraft* factor "does not weigh in favor of a likelihood of consumer confusion") (citing *Sleekcraft*, 599 F.2d at 349).[8]

<u>Proximity of the Goods</u>

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011). Here, Plaintiff's good is a television show whereas Defendants' goods are whiskey. Therefore, the proximity of the goods factor does not favor finding a likelihood of

---

[8] *See also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1033 (9th Cir. 2010) (descriptive and suggestive marks are "in the middle" range of weak to strong marks); *M2 Software, Inc. v. Madacy Ent.* 421 F.3d 1073, 1081 (9th Cir. 2005) (noting suggestive or descriptive marks are "conceptually weak").

confusion.

### Similarity of the Marks

The parties' marks both contain the term "Peaker Blinder." Therefore, the similarity of the marks factor would favor a finding of a likelihood of confusion.

### Evidence of Actual Confusion

As discussed above, of the screenshots of 14 social media posts submitted by Plaintiff, only one of the social media posts references a statement that Defendants' liquor is made by the television show (*see* Dkt. No. 24-6 at p.4 of 15 ("I'm a MASSIVE fan of the Peaky Blinders TV series so I had to try their Irish Whiskey and give it a review.")), one other post references the television show but does not associate Plaintiff or a single source as the producer of the liquor and television show.[9] Such sparce evidence is insufficient to support a likelihood of confusion. *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993) (the district court properly determined "de minimis evidence of actual confusion" was not "persuasive evidence of actual confusion").[10]

### Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." *Network Automation*, 638 F.3d at 1151. Here, the evidence demonstrates the parties both use the internet and social media for marketing. However, "given the broad use of the Internet today," "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel [such as the internet] does not shed much light on the likelihood of consumer confusion."

---

[9] Plaintiff also submits evidence of two media outlets purportedly confused about Defendants' mark. However, the relevant standard is confusion by consumers in the United States. *See Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004) (noting fourth *Sleekcraft* factor examines "actual confusion among significant numbers of **consumers**") (emphasis added).

[10] *See also Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 999 (C.D. Cal. 2002); *Globefill Inc. v. Elements Spirits, Inc.*, 2016 WL 8944644, at *5 (C.D. Cal. Sept. 20, 2016); *DeCosta v. Columbia Broad. Sys., Inc.*, 520 F.2d 499, 514 (1st Cir. 1975).

*Id.* (finding "the district court's determination that because both parties advertise on the Internet this [*Sleekcraft*] factor weighed in favor of Systems was incorrect"). Accordingly, the marketing channels factor does not favor a finding of a likelihood of confusion.

<u>Type of Goods and Degree of Care Likely To Be Exercised By Purchasers</u>

"[W]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Sleekcraft*, 599 F.2d at 353; *see also Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1280 (C.D. Cal. 2008). Here, Plaintiff offers evidence Defendants' allegedly infringing products are sold for less than $25.00, and some retailers offer discounts on that price. (Drangel Decl. ¶¶ 19-20.)

Defendants argue the price of its products "does not alone imply that consumers will not exercise case" and contend "the popularity of whiskey has grown dramatically over the last several years, and consumers have become increasingly more discerning when purchasing whiskey products."[11] Defendants cite to *Star Indus., Inc. v. Bacardi & Co.*, wherein the Second Circuit noted "[u]nhurried consumers in the relaxed environment of the liquor store, making decisions about $12 to $24 purchases, may be expected to exhibit sufficient sophistication to distinguish between . . . products." 412 F.3d 373, 390 (2d Cir. 2005). However, the Ninth Circuit has noted "consumers tend to exercise less care when purchasing lower cost items like wine." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1112 (9th Cir. 2016) ("consumers purchasing the vodka products are not likely to exercise a high degree of care"). Therefore, the type of goods and degree of care likely to be exercised by the

---

[11] Defendants submit copies of published articles regarding the growing popularity of whiskey and how customers of whiskey products are becoming more discerning and selective about their purchasing decisions. (Lamb Decl. ¶¶ 16, Ex. 10.)

purchaser weigh in favor of finding a likelihood of confusion.

### Defendant's Intent in Selecting the Mark

Plaintiff submits evidence of a comment in an article from Defendant Sadlers' sales director Mr. King in 2014, who stated with respect to Defendants' Peaky Blinder Beer: "*It's been selling like mad and done exceptionally well*; (2) *The idea came from our managing director Chris Sadler, who is also head brewer. To be honest, the idea was inspired. And with a second series of Peaky Blinders set to hit the screen in September, its popularity is only likely to increase*; and (3) *we are confident it will be a success because of the popularity of the television programme.*" However, Mr. King's comment is not evidence of Defendant's intent in initially selecting the mark. Sadler's managing director declares "[a]t the time that I chose the name Peaky Blinder, I had never heard of [Plaintiff's] Peaky Blinders television program . . . and no one at Sadler's was familiar with the program as far as I was aware," and further declares she "felt that Peaky Blinder was an appropriate name" for Sadler's new dark beer because the Peaky Blinder gang's "well-known dark history" "connected" with the dark beer and she was interested in naming the beer after the Peaky Blinder gang in light of her family and Sadler's history with the gang. (Sadler Decl. ¶¶ 4-21.) Therefore, the factor regarding Defendant's intent does not weigh in favor of a likelihood of confusion.

### Likelihood of Expansion of the Product Lines

"[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. There is no evidence Defendants plan to expand their products to television shows. On the other hand, Plaintiff's Commercial Director Susa Waddell declares "there has been great interest from third parties for licenses for wines and spirits," in May 2020 Plaintiff executed a license agreement with a third party for red wine featuring the Peaky Blinders

11

mark, and Plaintiff "has been unable to complete a deal" with potential third-party licensees "for other types of alcohol and spirits . . . as a result of the dispute with Defendants and their continued unauthorized use of the Peaky Blinders" marks. (Waddell Decl. ¶¶ 30-32.) Therefore, the likelihood of expansion of product lines factor weighs in favor of a finding of a likelihood of confusion.

\* \* \*

Here, the strength of the mark, proximity of the goods, evidence of actual confusion, marketing channels used, and Defendants' intent in selecting the mark factors do not support a finding of a likelihood of confusion, whereas the similarity of the marks, types of goods and degree of care of consumers, likelihood of expansion of product lines weigh in favor of finding a likelihood of confusion. Although three factors favor a finding of a likelihood of confusion, Plaintiff fails to make a "clear showing" of a likelihood of confusion at this stage. *See Winter*, 555 U.S. at 22 (A district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief.").

Accordingly, because Plaintiff does not demonstrate it has an ownership interest in a valid and protectible mark nor demonstrate a likelihood of confusion, Plaintiff fails to show a likelihood of success on the merits as to its false designation and unfair competition claims.

**(2) False Advertising and Passing Off**

Plaintiff argues in a footnote that its common law and California false advertising claims are "substantially congruent" to a claim for false designation of origin or trademark infringement under the Lanham Act. The cases cited by Plaintiff pertain to § 17200 claims and Lanham Act claims. *See Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (noting § 17200 unfair competition and Lanham Act infringement claims are "substantially congruent"); *Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152-53 (9th Cir. 1996) ("[S]tate common law claims

of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."), *abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013).

However, to prove a *prima facie* case for false advertising under § 1125(a), a plaintiff must show "that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse customers." *Caltex Plastics, Inc. v. Elkay Plastics Co., Inc.*, 671 F. App'x 538, 539 (9th Cir. 2016); *see also ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 616 (9th Cir. 2016) ("The elements of a Lanham Act § 43(a) false advertising claim are: ... the plaintiff has been or is likely to be injured as a result of the false statement....") (quoting *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997)). To prevail on a "passing off" claim under the Lanham Act, the Plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its product. *Wonderland Bakery Inc. v. Wonderland Custom Cakes*, *LLC*, 2013 WL 12123693, at *4 (C.D. Cal. May 6, 2013) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). Plaintiff does not prove these elements of its false advertising and passing off claims, and therefore fails to demonstrate a likelihood of success on these claims.

**B.    Irreparable Harm**

Plaintiff contends it is entitled to a presumption of irreparable harm based

on amendments to the Lanham Act in 2020. 15 U.S.C. § 1116(a), as amended, provides:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.

Because Plaintiff fails to demonstrate a likelihood of success on the merits, the rebuttable presumption of irreparable harm pursuant to 15 U.S.C. § 1116(a) does not apply.

Defendants argue even if the rebuttable presumption in Section 1116(a) applies, it is rebutted by Plaintiff's delay in seeking injunctive relief. Defendants contend Plaintiff had constructive knowledge of Defendants' intent to use the Peaky Blinder mark on beer and liquor products in the U.S. as of May 9, 2017, when Sadler filed a trademark application for use of the mark in the U.S. for beer and spirits (Sadler Decl. ¶ 44); and Plaintiff had actual knowledge at least as early as April 9, 2018, when Plaintiff's licensee sent a warning letter to Sadler regarding its purported infringement of Plaintiff's mark (Lamb Decl. ¶ 20; Waddell Decl. ¶ 20). Defendants argue that despite Plaintiff's knowledge regarding Defendants' use, Plaintiff waited until November 6, 2020 to file this action and did not file the instant Motion for Preliminary Injunction until March 1, 2021.

Plaintiff had actual knowledge of Defendants' use of the mark as of April 4, 2018, but waited over two years to file this action and nearly three years to file the instant Motion for Preliminary Injunction, which demonstrates Plaintiff would not be irreparably harmed absent an injunction.[12] *See Oakland Trib., Inc. v. Chron.*

---

[12] Courts have analyzed delay based on when the plaintiff was aware or should have been aware of the infringement. *See, e.g.*, *Cutting Edge Sols., LLC*, 2014 WL 5361548, at *5 (analyzing delay for purposes of determining whether there

14

*Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.").[13] Such delay rebuts any presumption of irreparable harm. *See Imagenetix, Inc. v. GNC Holdings, Inc.*, 2013 WL 12100701, at *3 (S.D. Cal. Mar. 29, 2013) (finding plaintiff's delay of over one year after filing complaint to seek a preliminary injunction rebutted any presumption of irreparable harm); *eAcceleration Corp. v. Trend Micro, Inc.*, 408 F. Supp. 2d 1110, 1122 (W.D. Wash. 2006) (finding plaintiff's delay of over one year in bringing a motion for a preliminary injunction "reverses any presumption" of irreparable harm). Therefore, Plaintiff fails to demonstrate it will suffer irreparable harm absent a preliminary injunction.

## C. Balance of Equities

Plaintiff argues the balance of equities tips in its favor because the only hardship Defendants will likely suffer is lost profits from its infringing activity. "Where the only hardship that the defendant[s] will suffer is lost profits from an activity which has been shown likely to be infringing," no equitable considerations support defendants. *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), *aff'd*, 348 F. App'x 288 (9th Cir. 2009); *Windsurfing Int'l v. AMF*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). However, Plaintiff fails to show a likelihood of success on its claims and therefore Plaintiff does not

---

was irreparable harm from when the plaintiff should have discovered defendant's infringement); *R. Josephs Licensing, Inc.*, 2010 WL 11595789, at *2 (analyzing delay for purposes of determining irreparable harm based on when the plaintiff first learned of defendant's infringement).

[13] *See also Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*, 2014 WL 5361548, at *5 (N.D. Cal. Oct. 20, 2014) (16-month delay between when plaintiff should have discovered defendant's use of the mark and the filing of a motion for preliminary injunction demonstrated lack of irreparable harm); *R. Josephs Licensing, Inc. v. J.L.J., Inc.*, 2010 WL 11595789, at *2 (C.D. Cal. Aug. 5, 2010) (plaintiff's delay of over two years from when it first learned of defendant's use of the mark and when plaintiff filed a motion for a preliminary injunction demonstrated plaintiff would not suffer irreparable harm absent an injunction).

demonstrate the balance of equities favors an injunction. *See also Cutting Edge Sols.*, 2014 WL 5361548, at *14 (finding "in the absence of any evidence of actual confusion—or diminished sales or tarnishment of CES's products due to the ongoing sales of the grass seed—there is little support for CES's claims of harm" but defendant "would suffer significant injury if it was enjoined from its current marketing and sales of its only profitable product").

**D.     Public Interest**

"The public has an interest in avoiding confusion between two companies' products." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009). Moreover, "[t]rademarks protect the public from confusion by accurately indicating the source of a product." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005); *see also Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, 2014 WL 1246497, at *4 (C.D. Cal. Mar. 21, 2014) ("The public interest . . . favors granting an injunction to avoid continuing violation of the Lanham Act."). However, here Plaintiff does not demonstrate it has an ownership interest in a valid and protectible mark nor demonstrate a likelihood of confusion. Accordingly, Plaintiff fails to demonstrate public interest favors a preliminary injunction.

## IV.     CONCLUSION

Because Plaintiff fails to demonstrate a likelihood of success on the merits, irreparable harm, and that the balance of equities and public interest favor an injunction, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.


**IT IS SO ORDERED.**


DATED:  May 19, 2021.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE